UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEPHANIE GRAF,

                          **Plaintiff,**

v.
                                                      17-CV-687

NANCY BERRYHILL, Acting Commissioner
of Social Security,

                          **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 15. Stephanie Graf ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 10, 13.

## BACKGROUND

Plaintiff filed an application for SSI and DIB on July 2, 2013, alleging disability commencing January 1, 2009. Tr. at 10, 64-72, 118-26.[1] Plaintiff claims to be

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 7.

disabled because of depression and anxiety. Tr. at 29-30. Plaintiff's initial application was denied and at her request, a hearing was held before Administrative Law Judge ("ALJ") Timothy M. McGuan on November 20, 2015. Tr. at 24-46. Plaintiff appeared with her attorney and testified, along with a vocational expert. Tr. at 24-46. On December 15, 2015, the ALJ issued a decision finding Plaintiff not disabled. Tr. at 7-23. The Appeals Council denied Plaintiff's request for review on May 25, 2017, making the ALJ's determination the final decision of the Commissioner. Tr. 1-3. Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

## LEGAL STANDARD

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2007).  The section directs that when considering such

3

a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions were based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105–106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)) (per curiam). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's

4

conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## **DISCUSSION AND ANALYSIS**

**The ALJ's Decision**

ALJ McGuan analyzed Plaintiff's claims using the familiar five-step process described above.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  Preliminarily, the ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2015.  Tr. at 12.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2009, her alleged onset date.  Tr. at 12.  At step two, he found that Plaintiff had the following severe impairments:  depressive disorder and anxiety disorder.  Tr. at 13.  At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the listings set forth at 20 C.F.R. § 404, Subpt. P, Appx. 1.  Tr. at 13-14.

Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: she retains the ability to occasionally interact with the public and can occasionally understand, remember, and carry out complex detailed tasks.  Tr. at 14.  The ALJ opined that the "longitudinal medical evidence is not necessarily consistent with the claimant's allegations of disability."  Tr. at 15.  Although Plaintiff complained of suffocating feelings, a racing heart, dizziness, mood swings and crying spells, the ALJ observed that "the medical record overall shows that [she] retained normal psychiatric

5

exams, normal mood and affect[.]" Tr. at 15. In fact, the ALJ noted, shortly before her hearing, Plaintiff "reported that her anxiety was moderate and felt under control" and that she was "only taking one Xanax a day." Tr. at 15.

Continuing to the fourth step, the ALJ relied on the vocational expert, Michelle Erbacher, in concluding that Plaintiff was unable to perform her past work as a personal care aide. Tr. at 17. At step five, considering Plaintiff's status as a younger person with a high school education, ability to speak English, with past work experience as an aide and a hairdresser and the aforementioned RFC, the ALJ relied on the vocational expert's testimony in finding that Plaintiff could perform work that exists in the national economy. Tr. at 18. Specifically, the vocational expert opined that Plaintiff could work as a cleaner/housekeeper or a routing clerk. Tr. at 18. Accordingly, the ALJ concluded that Plaintiff was not disabled from January 1, 2009, her alleged onset date, through December 15, 2015, the date of his decision.

**Judgment on the Pleadings**

The parties have cross-moved for judgment on the pleadings. Dkt. Nos. 10, 13. Plaintiff raises one argument in support of her motion, that is, that the ALJ failed to properly weigh the opinion of Licensed Clinical Social Worker Tracy E. Pay ("LCSW Pay"), a treating source, in determining her RFC. Dkt. No. 10-1, pp. 9-13. As a result, Plaintiff argues, the Commissioner's determination that she is not disabled is not supported by substantial evidence. Dkt. No. 10-1, pp. 9-13. The Commissioner argues that the ALJ provided legitimate reasons for assigning "little weight" to Ms. Pay's opinion, and that his decision is free of legal error and his conclusion is supported by

6

substantial evidence.  Dkt. No. 13-1, pp. 17-24.  For the reasons that follow, this Court denies Plaintiff's motion for judgment on the pleadings and grants the Commissioner's motion seeking the same.

**The ALJ's Consideration of LCSW Pay's Opinion**

On November 12, 2015, LCSW Pay wrote a letter to the Law Offices of Kenneth Hiller regarding Plaintiff's "eligibility" for "disability."  Tr. at 410.  Therein, LCSW Pay reported that at that time, Plaintiff was "a 28-year-old married female with one three-year-old son" who was "approximately eight and a half months pregnant" and "not taking any psychotropic medications due to pregnancy but previously has been on Zoloft and Burspar through her primary care physician."  Tr. at 410.  According to LCSW Pay, Plaintiff attended outpatient mental health treatment "from 6/20/2015 through the present time" under a dual diagnosis of "Generalized Anxiety Disorder with Panic" and "Depressive Disorder, Unspecified."  Tr. at 410.  LCSW Pay noted that Plaintiff's "symptoms include chronic anxiety, panic and depression, which she has struggled with since 2008/2009 as per her report," and that she had "severe panic attacks on a daily basis."  Tr. at 409.  "Mrs. Graf has reported that past attempts at working were unsuccessful due to the severity of her panic," LCSW Pay wrote.  Tr. at 409.  "In my clinical opinion," LCSW Pay stated, "Mrs. Graf's work capability is presently compromised and therefore, it would be detrimental to her mental well being to be in a work environment."  Tr. at 410.

Plaintiff contends that the ALJ erred in assigning "little weight" to this opinion, and that the error warrants a remand. This Court does not agree. As an initial matter, a social worker, even a licensed clinical social worker, is not classified as an "acceptable medical source," but rather, as an "other source" under the regulations. *See* 20 C.F.R. § 416.913(a); 20 C.F.R. § 416.913(d)(1). Opinions from other sources regarding a claimant's ability to work may be considered but are not entitled to controlling weight. *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing Social Security Ruling 06-3p); *see also Bliss v. Comm'r Soc. Sec.*, 406 F. App'x 541 (2d Cir. Jan. 19, 2011) (holding that the social worker's assessment was ineligible to receive controlling weight because social workers do not qualify as "acceptable medical source[s]").

Moreover, as the ALJ noted, LCSW Pay did not assess Plaintiff's mental abilities on a function-by-function basis but merely opined that her "work capability" was "presently compromised." Tr. at 16, 410. The ultimate issue of whether a claimant is capable of working is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e); 416.927(e)(1). Thirdly, although LCSW Pay shared a treating relationship with plaintiff, the ALJ recognized that the "relation was for a short period at the time of the assessment," approximately five months long. Tr. at 16. The length of a treating relationship is an appropriate factor for an ALJ to consider in deciding what weight to afford to treating source. *Ecklund v. Comm'r*, 349 F. Supp. 3d 235, 242 (W.D.N.Y. 2018) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Plaintiff complains that the ALJ erred in giving LCSW Pay's opinion little weight under the length-of-treating-relationship reasoning while giving "significant weight" to the opinion of Dr. Gregory Fabiano ("Dr. Fabiano"), who examined Plaintiff only once. Dkt. No. 10-1, pp. 10-11. This argument is flawed for several reasons. As the ALJ noted, Dr. Fabiano's opinion that Plaintiff was not restricted by her mental impairments was consistent with the objective medical evidence in the record. Tr. at 16, 371-75. Moreover, it is clear from his report that Dr. Fabiano predicated his opinion on his direct physical examination of Plaintiff (revealing that Plaintiff was cooperative and well groomed; had appropriate eye contact and fluent speech; demonstrated adequate expressive and receptive language skills; and exhibited coherent and goal directed thought processes, euthymic mood, intact attention, concentration and memory skills, average cognitive functioning, and good insight and judgment) and the objective medical and other evidence (revealing that Plaintiff had never been hospitalized for psychiatric reasons and had no family history; that she was married with no legal problems, and was able to groom herself, look after her young child, take care of her house, and manage money). Tr. at 372-74.

By contrast, LCSW Pay's much more restrictive opinion appears to be based solely Plaintiff's subjective complaints. Tr. at 410. There are no treatment notes from LCSW Pay that support her opinion that Plaintiff could not work or was otherwise compromised. Tr. at 212-410. Plaintiff, who bears the burden of proving that she is disabled, told the ALJ that the record was complete. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); Tr. at 26. The ALJ also reasoned that Plaintiff's treatment was generally routine and conservative in nature, belying LCSW Pay's opinion that Plaintiff

9

could not work.  Tr. at 15.  For example, in February and March of 2009, after her alleged onset date, Plaintiff went to the emergency room, but her psychiatric exams showed that her mood was appropriate and her cognitive function, behavior, appearance, insight, and thought content were all within normal limits, and she was discharged home.  Tr. at 218-19, 228.  Plaintiff did not seek any mental health treatment between her emergency room visit in March 2009 and August 2011, approximately 27 months.  This indicates that Plaintiff's symptoms were not as severe as LCSW Pay concluded.  *Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018) (holding that where a claimant "has sought little-to-no treatment for an allegedly disabling condition, his inaction may appropriately be construed as evidence that the condition did not pose serious limitations").

Even during her emergency room visits, Plaintiff's thought processes were relevant, her speech fluent, her mood appropriate and her affect normal.  Tr. at 15, 275.  At a mental exam a year later in June 2012, Plaintiff demonstrated fluent speech, appropriate mood, and normal affect.  Tr. at 15, 263.  She showed no acute distress at exams in August and October 2012, or in January and March 2013.  Tr. at 15, 250, 254, 258.  In March 2015, Plaintiff reported that her anxiety was moderate but "under control."  Tr. at 15, 391.

This objective medical evidence was consistent with Plaintiff's hearing testimony and her reported activities of daily living, which did not support a restrictive RFC.  By way of example, Plaintiff testified that before her pregnancy, her medication was helping control her anxiety although "not 100%."  Tr. at 37.  Plaintiff reported that

she hung out with her neighbors and took care of her son, doing basically "everything you do for a kid," like feeding, bathing and clothing him. Tr. at 164. She testified that when she experienced anxiety while watching her son, she focused on him to ease her mind. Tr. at 36. Plaintiff also testified that she took care of her house, cooking for her family and cleaning. Tr. at 37. These activities are inconsistent with Plaintiff's claims that she is disabled by depression and anxiety. *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (holding that the ALJ properly discounted Plaintiff's claim that he was disabled where he took care his one-year-old child, changed diapers, and sometimes vacuumed and washed dishes).

Under the circumstances, the ALJ did not err in declining to give controlling weight to LCSW Pay's opinion which, on its face, was based solely on Plaintiff's subjective reports. *Fagner v. Berryhill*. No. 14-CV-6569, 2017 WL 2334889, at *8 (W.D.N.Y. May 30, 2017). It is, in fact, the role of the ALJ to compare specific medical opinions against the record as a whole, and to reject those opinions that are inconsistent with the evidence. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7-8 (2d Cir. 2017) (holding that the ALJ did not violate the "treating physician" rule, where ALJ determined that the treating doctor's treatment notes often stated that the claimant's mood was "stable" or "good," contradicting the doctor's restrictive RFC assessment). Given that Plaintiff's mental examinations were largely unremarkable and her treatment history conservative, this Court finds that the ALJ did not err in giving little weight to LCSW Pay's opinion that Plaintiff could not work. *Overstreet v. Berryhill*, 335 F. Supp. 3d 500, 504 (W.D.N.Y. 2018) (holding that Plaintiff's largely unremarkable physical and mental examination

findings and conservative treatment history were relevant factors in determining whether she was disabled).

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is hereby GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:    Buffalo, New York
               May 31, 2019

                                       *s/ H. Kenneth Schroeder, Jr.*
                                       **H. KENNETH SCHROEDER, JR.**
                                         **United States Magistrate Judge**